George W. WALKER,
Plaintiff–Appellant,

v.

Otis R. BOWEN, Secretary, Department
of Health and Human Services,
Defendant–Appellee.

No. 88–2916.

United States Court of Appeals,
Fourth Circuit.

Argued March 10, 1989.

Decided June 6, 1989.

As Amended Oct. 31, 1989.

Susan Lee Canby (Southside Virginia Legal Services, Inc., Richmond, Va., on brief), for plaintiff-appellant.

William Brian Reeser (Beverly Dennis, III, Chief Counsel, Region III, Charlotte Hardnett, Chief, Social Security Litigation Div., Deborah Fitzgerald, Asst. Regional Counsel, Office of the Gen. Counsel, Dept. of Health & Human Services, Henry E. Hudson, U.S. Atty., Alexandria, Va., G. Wingate Grant, Asst. U.S. Atty., Richmond, Va., on brief), for defendant-appellee.

Before HALL, PHILLIPS, and WILKINS, Circuit Judges.

K.K. HALL, Circuit Judge:

George W. Walker ("claimant") appeals from an order of the district court affirming the Secretary's denial of his claim for disability insurance benefits and supplemental security income, brought pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1381. Because we conclude that the Secretary erred in his evaluation of the claimant's disability in several respects, we vacate the judgment of the district court and remand the case with instructions to return it to the Secretary for further proceedings.

## I.

The claimant is 58 years old, has a high school education, and formerly worked as a bricklayer in the construction industry. He filed his current applications for disability benefits and supplemental security income ("SSI") on June 21, 1984,[1] alleging that he had been disabled since 1979 as a result of several ailments.

His claims were denied initially and upon reconsideration. The claimant then requested a hearing before an administrative law judge. An administrative hearing was held on July 2, 1986, at which the ALJ considered the application for disability benefits as well as the one for SSI.

At the hearing, the claimant established through medical evidence and his own testimony that he suffers from diabetes mellitus, diabetic neuropathy, background retinopathy, hypertension, seizure disorder, cirrhosis with ascites, diverticulitis, chronic dermatitis, a hiatal hernia, and degenerative joint disease. In addition, claimant has a cleft palate with a resulting speech defect and a history of pancreatitis, cellulitis, and alcohol abuse.

The claimant testified that his diabetes has been difficult to control and that he experiences constant numbness in his hands and feet; he also suffers from leg pain and at times is unable to walk because of the pain. Further, he has a rash over much of his body and the resulting itching keeps him awake at night. He also has trouble staying awake during the day though he is not sure whether it is due to his medication or seizure condition. He vomits every morning and suffers stomach pain the rest of the day. He needs assistance in his daily household duties because of pain in his back, legs, and stomach.

Notwithstanding these impairments, the ALJ found that although the claimant could not return to his past relevant work as a bricklayer, he could perform sedentary and light work limited only by his inability to work around unprotected heights because of his seizure disorder and, thus, was not under a disability as defined in the statute. The ALJ's decision was approved by the Appeals Council on April 28, 1987, thereby becoming the final decision of the Secretary. The claimant filed the instant

---

1. Claimant had previously filed concurrent applications for disability benefits and SSI in 1978, 1979, 1980, 1981, and 1982; each was denied initially or by an administrative law judge.

action for judicial review. The case was referred to a magistrate who concluded that there was substantial evidence to support the Secretary's denial of benefits. The district court agreed and granted the Secretary's motion for summary judgment.

## II.

■ On appeal, the claimant first contends that the Secretary improperly evaluated his complaints of pain. We agree. The ALJ concluded that the claimant's subjective complaints of pain and allegations of disability were not corroborated by the preponderance of the medical evidence as to the severity and frequency of his symptoms and limitations. We have held that pain itself can be disabling, and it is incumbent upon the ALJ to evaluate the effect of pain on a claimant's ability to function. *See Myers v. Califano*, 611 F.2d 980 (4th Cir.1980). Further, while there must be objective medical evidence of some condition that could reasonably produce the pain, there need not be objective evidence of the pain itself or its intensity. *Foster v. Heckler*, 780 F.2d 1125, 1129 (4th Cir.1986).

■ The record in this case clearly shows that the claimant suffers from impairments that can cause pain. The claimant testified about his ailments and he also submitted medical evidence to substantiate them. He therefore met the required pain standard and the ALJ should have evaluated the effect of that pain on the claimant's residual functional capacity. Instead, the ALJ found that the claimant's capacity for the full range of sedentary and light work was not significantly compromised by any nonexertional limitations and applied the medical-vocational guidelines ("grids") to determine that the claimant was not disabled. The claimant contends that the ALJ erred in doing so and we agree.

Each grid considers only the strength or exertional component of a claimant's disability in determining whether jobs exist that the claimant is able to perform in spite of his disability. Thus, in cases where pain occurs only upon exertion and limits one's strength functioning, the grid tables will apply. But when a claimant suffers from both exertional and nonexertional limitations, the grid tables are not conclusive but may only serve as guidelines. *Wilson v. Heckler*, 743 F.2d 218 (4th Cir.1984).

In this case the evidence showed the claimant's pain to be sufficiently nonexertional in nature so as to preclude use of the grids as dispositive of the claim. We recognize that not every nonexertional limitation or malady rises to the level of a nonexertional impairment, so as to preclude reliance on the grids. *Grant v. Schweiker*, 699 F.2d 189 (4th Cir.1983). The proper inquiry under *Grant* is whether the nonexertional condition affects an individual's residual functional capacity to perform work of which he is exertionally capable. In this case, we conclude that the ALJ erred in applying the grids in view of the substantial evidence of claimant's pain and the objective medical evidence of several conditions that could reasonably cause the pain.

## III.

■ Next, the claimant argues that the district court erred in affirming the Secretary's decision because the ALJ failed to consider the combined effect of his numerous physical impairments. The ALJ found that although claimant suffered from numerous ailments, he did not have an impairment or combination of impairments listed in, or medically equal to, one listed in Appendix 1, Subpart P, Reg. No. 4. This finding in itself, however, is not sufficient to foreclose disability. Congress explicitly requires that "the combined effect of all the individual's impairments" be considered, "without regard to whether any such impairment if considered separately" would be sufficiently severe, 42 U.S.C. § 423(d)(2)(c), *Hines v. Bowen*, 872 F.2d 56, 59 (4th Cir.1989). Therefore, a failure to establish disability under the listings by reference to a single, separate impairment does not prevent a disability award.

After finding that claimant failed to meet a listing, the ALJ went on to discuss each of claimant's impairments but failed to analyze the cumulative effect the impairments had on the claimant's ability to work. He

simply noted the effect or noneffect of each and found that the claimant could perform light and sedentary work. It is axiomatic that disability may result from a number of impairments which, taken separately, might not be disabling, but whose total effect, taken together, is to render claimant unable to engage in substantial gainful activity. In recognizing this principle, this Court has on numerous occasions held that in evaluating the effective of various impairments upon a disability benefit claimant, the Secretary must consider the combined effect of a claimant's impairments and not fragmentize them. *Reichenbach v. Heckler*, 808 F.2d 309 (4th Cir.1985); *DeLoatche v. Heckler*, 715 F.2d 148 (4th Cir.1983); *Oppenheim v. Finch*, 495 F.2d 396 (4th Cir.1974); *Hicks v. Gardner*, 393 F.2d 299 (4th Cir.1968); *Griggs v. Schweiker*, 545 F.Supp. 475 (S.D.W.Va. 1982).

As a corollary to this rule, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments. *Reichenbach*, 808 F.2d at 312. In this case, the ALJ did not comply with these requirements and the claimant is entitled to have his claim remanded for proper consideration.

### IV.

█ Because we have found that the grids cannot be relied upon to show conclusively that claimant is not disabled, when the case is remanded it will be incumbent upon the Secretary to prove by expert vocational testimony that despite the combination of exertional and nonexertional impairments, the claimant retains the ability to perform specific jobs which exist in the national economy. *See Taylor v. Weinberger*, 512 F.2d 664 (4th Cir.1975).

At the hearing on October 16, 1986, the testimony of a vocational expert was taken.[2] The expert testified that the claimant's former employment as a bricklayer gave him two transferable skills—the ability to use small tools and a knowledge of construction principles. He testified that these skills would be transferable to jobs such as termite treater, termite treater helper, surveyor helper or drywall applicator. The vocational expert testified that these jobs required light or medium exertion.

█ The ALJ then asked the following questions of the vocational expert:

Q: If Mr. Walker was limited to [per]forming sedentary work, would he be able to transfer any of the prior skills to any sedentary jobs?

A: The ability to use small tools would be transferable ... to jobs that are in bulk called assembly jobs. Assemblers—there are about 1,400 such jobs in the City of Richmond. About 20,000 throughout the State of Virginia. These are jobs where people use small tools to assemble in some cases automobile parts, parts dealing with electrical appliances such as fans, and other small items.

   .    .    .    .    .

Q: Mr. Walker has told us about a number of health problems that cause him functional limitations and subjective distress, too. If I found all of his testimony to be credible and supported by the medical evidence, how would that affect his ability to do the types of jobs you've discussed with me.

A: In my opinion ... it would effectively preclude him from doing any of the jobs that I've enumerated.

Neither of these questions was a proper question. The purpose of bringing in a vocational expert is to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform. In order for a vocational expert's opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record, *Chester v. Mathews*, 403 F.Supp. 110 (D.Md.1975), and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments.

---

**2.** It appears that a vocational expert was called at the October, 1986, hearing to testify primarily about the claimant's transferable skills, which are critical to a disability determination for a person of advanced age. *See* 20 C.F.R. § 404.1563.

*Stephens v. Secretary of Health, Education and Welfare,* 603 F.2d 36 (8th Cir. 1979). In this case the ALJ did not ask questions that ensured that the vocational expert knew what the claimant's abilities and limitations were. Therefore, his answers to those questions were not particularly useful.

 Further, it is difficult to see how a vocational expert can be of any assistance if he is not familiar with the particular claimant's impairments and abilities—presumably, he must study the evidence of record to reach the necessary level of familiarity. In addition, the opinion of a vocational expert must be based on more than just the claimant's testimony—it should be based on the claimant's condition as gleaned from the entire record. There is no indication that that was done in this case and for this reason and others in this opinion, this case must be remanded for further consideration.

### V.

Accordingly, the judgment of the district court is vacated and the case is remanded to the court with directions to remand to the Secretary for further proceedings consistent with this opinion.

VACATED AND REMANDED.