917 F.2d 1301
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Gloria J. CARR, Plaintiff-Appellant,
v.
Louis W. SULLIVAN, Secretary of Health and Human Services,
Defendant-Appellee.
 No. 89-2827.
 United States Court of Appeals, Fourth Circuit.
 Argued May 11, 1990.
Decided Nov. 8, 1990.
As Amended Nov. 16, 1990.
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Albert V. Bryan, Jr., Chief District Judge. (CA-89-221-A)
 Dallas K. Mathis, Falls Church, Va., for appellant.
 Sharon Teris Whitney, Office of the General Counsel, Department of Health and Human Services, Philadelphia, Pa., (Argued), for appellee; Beverly Dennis, III, Chief Counsel, Region III, Charlotte Hardnett, Chief, Social Security Litigation Division, Robert S. Drum, Assistant Regional Counsel, Office of the General Counsel, Department of Health and Human Services, Philadelphia, Pa., Henry E. Hudson, United States Attorney, Robert C. Erickson, Jr., Assistant United States Attorney, Alexandria, Va., on brief.
 E.D.Va.
 AFFIRMED.
 Before MURNAGHAN, Circuit Judge, JOSEPH H. YOUNG, Senior United States District Judge for the District of Maryland, sitting by designation, and JAMES B. McMILLAN, Senior United States District Judge for the Western District of North Carolina, sitting by designation.
 PER CURIAM:
 
 
 1
 Gloria Carr applied for Disability Insurance Benefits under Titles II and XVIII of Social Security Act, claiming that she is unable to work due to constant pain. An Administrative Law Judge ("ALJ") denied the application. After the Social Security Administration's Appeals Council denied a request by Carr for review, Carr appealed to the United States District Court for the Eastern District of Virginia. There, the district court accepted the recommendation of a magistrate's report to affirm the decision against Carr. Carr has appealed, alleging error in the manner in which the ALJ assessed her subjective testimony regarding her pain.
 
 
 2
 * Carr, age forty-eight, worked for the C & P Telephone Company ("C & P") for almost twenty years. She stopped working in July 1986. In December 1986 she briefly resumed work but stopped again after seven days. Carr claims to have stopped working because she suffers from constant pain.
 
 
 3
 Seeking social security benefits for her disability, Carr appeared before an ALJ for a hearing on March 29, 1988.[1] At the beginning of the proceeding, various medical reports were entered into evidence. The reports included the examination reports of several doctors and included medical assessments of the cause and extent of Carr's pain and disability.
 
 
 4
 After admitting the medical evidence, the ALJ examined Carr regarding a variety of issues including the nature and degree of pain that Carr suffered. The bulk of that portion of the examination occurred in the following colloquy:
 
 
 5
 Q. Where was the pain?
 
 
 6
 A. It started in the neck and the left arm and shoulder, and it just continuously spreaded [sic] and got worse.
 
 
 7
 Q. Throughout the entire body?
 
 
 8
 A. Throughout the entire body, even up to my eyelids.
 
 
 9
 .............................................................
 
 
 10
 ...................
 
 
 11
 * * *
 
 
 12
 Q. Where is the pain now?
 
 
 13
 A. All over. Even under the bottoms of my feet. They stay sore constantly. I have pain varying from something like a pin prick to degrees as if I'm being shot with a needle that's been burned.
 
 
 14
 Q. Does the pain come and go or is it there all the time?
 
 
 15
 A. In my arms and hands, it's there all the time. And my legs, it comes and goes. And when it first started, I could get through maybe two, three days out of a week without pain. Now, it's every day.
 
 
 16
 Q. Pain in the legs and it still comes and goes, or is that there all the time?
 
 
 17
 A. It still comes and goes, but it's more there than gone.
 
 
 18
 Q. So, the pain in the arms or hands is constant, and the leg comes and goes?
 
 
 19
 A. Yes, sir.
 
 
 20
 Q. Okay. How would you describe the level of the pain? Does it vary in severity?
 
 
 21
 A. [Carr answered and a detailed discussion of her sleeping difficulties followed.]
 
 
 22
 The ALJ also questioned Carr about her daily activities:
 
 
 23
 Q. How do you spend your day?
 
 
 24
 A. I read. Sometimes I watch a little television. Most of the time I start walking throughout the house. When my legs are really bothering me, I can't sleep still. It's--I have to move them. Even if I'm sitting, I have to move my legs. I can't keep them still.
 
 
 25
 Q. Because they're in pain?
 
 
 26
 A. It's almost like--you know--something like I have to move them. I can't keep them still. When they're like that, it's not actually pain. It feels like that your arm or leg has gone to sleep, and when the feelings start coming back, the tingling sensation is more multiplied than if you normally just lay on your arm or leg and it goes to sleep.
 
 
 27
 Q. Do you do your own grocery shopping?
 
 
 28
 A. I had up until the middle part of last year. I was doing everything for myself. It just took longer to do it.
 
 
 29
 Q. Why did you stop in the middle of last year?
 
 
 30
 A. Because it got to be a problem of going to the store walking around and pushing the basket. My back started acting up worse.
 
 
 31
 Q. Due to the pain that you were experiencing?
 
 
 32
 A. The lower back pain was worse, you know, as far as going to the grocery store.
 
 
 33
 Q. So, you don't do any now?
 
 
 34
 A. No. I usually send my daughter to get my groceries.
 
 
 35
 Q. Do you do your housework?
 
 
 36
 A. No. My son does the housework and my daughters come over and do my washing for me. I usually end up cooking because most of the time whatever I fix is either broiled or baked, and I can take my time getting it prepared and then just slide it into the oven and doesn't [sic] constitute all the time of standing around in the kitchen which--
 
 
 37
 Q. Do you have any outside activities that you engage in?
 
 
 38
 A. I go out sometimes on the weekend?
 
 
 39
 Q. Where do you go?
 
 
 40
 A. To a social club my husband belonged to, and that is the only time that I can be free of pain, and that's because when I get out I drink.
 
 
 41
 Q. How much do you drink?
 
 
 42
 A. About a half of a pint.
 
 
 43
 Q. So that helps to relieve the pain?
 
 
 44
 A. That eases it off considerably.
 
 
 45
 At the conclusion of his questioning, the ALJ gave Carr an opportunity to add anything not covered by her answers to his questions.
 
 
 46
 On June 30, 1988, the ALJ issued his opinion. The ALJ summarized Carr's testimony and examined in detail the medical evidence in the record. The ALJ noted that Dr. John T. Hicks concluded that Carr had a combined sleep disorder and fibromyalgic syndrome or fibrositis.[2] Dr. Hicks had observed that Carr's gait and muscle strength were normal, but that she has "muscle pain all over her body and has some limitation of motion of her back due to pain." The ALJ also noted that Dr. Michael Sirdofsky, a neurologist, examined Carr and found that she was "neurologically intact," although Dr. Sirdofsky opined that Carr "is suffering from significant insomnia and fibrositis." Dr. Gary G. Kay, a psychologist, also examined Carr and the ALJ observed that Dr. Kay suggested relaxation therapy although he found no strikingly unusual psychological features. Finally, Dr. Andrew B. Molchon, a psychiatrist, examined Carr and concluded that Carr's "mental status examination was essentially within normal limits." After generally discussing his overall impression of the medical evidence, the ALJ concluded that Carr's
 
 
 47
 impairments preclude performance of work-related activities requiring prolonged standing, walking, bending, stooping, lifting or carrying more than 10 pounds. [Carr's] complaints of pain and its resulting symptom-related limitations are noted. However, her subjective complaints are out of proportion with the objective medical findings and do not establish that such symptom-related limitations are of an intensity, frequency or duration as to preclude performance of all exertional activities.
 
 
 48
 (Emphasis added.) The ALJ then found that Carr "retains a residual functional capacity to engage in sedentary work." Observing that Carr's past relevant work "required performance of exertional activities consistent with sedentary work," the ALJ concluded that Carr "retains sufficient functional capacity to engage in her past relevant occupation," and was, therefore, not entitled to benefits.
 
 
 49
 At the close of his opinion, the ALJ formally listed his findings. One of these included a restatement of his assessment of Carr's testimony regarding her pain:
 
 
 50
 The claimant's subjective complaints of pain and its resulting symptom-related limitations are credible only to the extent that certain strenuous activities are precluded. However, the objective clinical findings are out of proportion with the claimant's subjective symptoms, and do not support a conclusion that such symptom-related limitations are of an intensity, frequency or duration as to preclude performance of all exertional activities.
 
 
 51
 (Emphasis added.)
 
 II
 
 52
 The crux of Carr's argument before us is that the ALJ applied an improper standard in his assessment of Carr's pain. Carr does not allege error in the ALJ's evaluation of the medical evidence. Instead, Carr argues that the ALJ's treatment of her subjective testimony regarding her pain did not obey Social Security Ruling 88-13 ("SSR 88-13"), which provides:
 
 
 53
 [W]here the degree of pain alleged is significantly greater than that which can be reasonably anticipated based on the objective physical findings, the adjudicator must carefully explore any additional limitation(s) imposed by the pain on the individual's functional ability beyond those limitations indicated by the objective medical evidence before any conclusions about severity can be reached.
 
 
 54
 SSR 88-13 directs ALJs to "obtain detailed descriptions of daily activities by directing specific inquiries about the pain and its effects to the claimant, his/her physicians from whom medical evidence is being requested, and other third parties who would be likely to have such knowledge," whenever the claimant alleges pain that is not supported by objective medical evidence. Carr argues that the ALJ's evaluation of Carr's subjective complaints did not comply with that standard.
 
 
 55
 Generally, we review decisions regarding social security benefits to determine if there is substantial evidence to support an ALJ's findings. See, e.g., Shively v. Heckler, 739 F.2d 987, 989 (4th Cir.1984). We also review such decisions to ensure compliance with proper legal standards for evaluating evidence. See, e.g., Walker v. Bowen, 889 F.2d 47 (4th Cir.1989). Applying that standard, we find that the ALJ's questioning during Carr's hearing demonstrates compliance with SSR 88-13 and that his remark that "the objective clinical findings are out proportion with [Carr's] subjective symptoms" does not represent infidelity to SSR 88-13's standard.
 
 
 56
 The ALJ "carefully explored" Carr's allegation of the existence of pain beyond that indicated by the objective evidence. The ALJ also had before him reports providing specific medical opinions as to the extent of the restrictions upon Carr's ability to work. The ALJ simply found that Carr's testimony, standing alone, did not persuade him that Carr could not perform her sedentary work and that her testimony of pain was "out of proportion" with the objective medical evidence. SSR 88-13 obligates ALJs to inquire into subjective descriptions of pain; it does not obligate them wholly to ignore the medical evidence. Here, the ALJ elicited Carr's testimony, considered it in conjunction with the medical evidence, and concluded that it was credible only to a limited extent.
 
 
 57
 Although Carr's argument is simply that the ALJ violated SSR 88-13, we note that nothing in the proceedings or the ALJ's opinion indicates a departure from Fourth Circuit case law.[3] We have held that while a finding of disabling pain requires "objective medical evidence of some condition that could reasonably produce the pain, there need not be objective evidence of the pain itself or its intensity." Walker v. Bowen, 889 F.2d 47, 49 (4th Cir.1989); see also Hyatt v. Sullivan, 899 F.2d 329, 336 (4th Cir.1990) (court ordering that SSR 88-13 provide that "the absence of objective medical evidence of the intensity, severity, degree or functional effect of pain is not determinative").
 
 
 58
 However, although we have made clear that a claimant is entitled to have his subjective testimony considered even in the absence of objective proof of his pain, we have never held that an ALJ is prohibited from considering the relationship between the objective and the subjective evidence when performing the difficult function of deciding whether to credit a claimant's description of his pain. To the contrary, we have held that "subjective evidence of pain cannot take precedence over objective medical evidence or the lack thereof." Parris v. Heckler, 733 F.2d 324, 327 (4th Cir.1984). Protection of a claimant's power to establish the existence of disabling pain even without objective evidence of the pain's severity ensures the claimant only the opportunity to persuade the ALJ; it does not, obviously, ensure the claimant of a favorable result. As in the case of other factual questions, credibility determinations as to a claimant's testimony regarding his pain are for the ALJ to make. See Shively v. Heckler, 739 F.2d 987, 989-90 (4th Cir.1984) (affirming ALJ's decision to discredit claimant's testimony as to pain that was out of proportion with objective evidence because the court was persuaded that ALJ considered the testimony). For us to hold that an ALJ may not consider the relationship between the objective evidence and the claimant's subjective testimony as to pain would unreasonably restrict the ALJ's ability meaningfully to assess a claimant's testimony.[4]
 
 
 59
 Here, the ALJ did not demand objective evidence of the pain itself. Instead, he heard Carr's subjective testimony of her pain and, as the finder of fact, assessed its credibility in the context of the other evidence before him. He concluded that the pain to which she testified was out of proportion to the medical evidence. Such a finding is supported by substantial evidence and consistent with our prior cases.[5]
 
 
 60
 Accordingly, the judgment of the district court is
 
 
 61
 AFFIRMED.
 
 
 62
 McMILLAN, Senior District Judge, dissents.
 
 
 63
 McMILLAN, Senior District Judge, dissenting:
 
 
 64
 With all respect, I dissent.
 
 
 65
 Under established decisions of this Circuit, I believe the lower court decision should be reversed and the Secretary should be instructed to award benefits to the plaintiff.
 
 
 66
 The Administrative Law Judge ("ALJ") found that Carr, the plaintiff, had fibromyalgia syndrome, an ailment capable of causing pain. In evaluating whether Carr's pain was disabling, the ALJ considered her pain medication and her everyday activities. He also noted that there was objective medical evidence of her pain, in that there were physical findings that she had "some tenderness in the neck and back area." However, the ALJ emphasized the absence of additional objective medical evidence of the intensity of her pain; for example, he pointed out that there were "no significant findings" of restriction of joint motions, and "no indication of muscle spasm, muscle weakness, joint swelling, deformities, sensory, motor or reflex abnormalities." Appendix at 13.
 
 
 67
 The ALJ found that Carr's subjective complaints of disabling pain were not credible because "the objective clinical findings are out of proportion with the claimant's subjective symptoms," and he therefore rejected her disability claim. Appendix at 14.
 
 
 68
 Under Fourth Circuit law, the ALJ applied the wrong standard in assessing plaintiff's pain.
 
 
 69
 This Court has repeatedly held that once a claimant has produced objective medical evidence that shows an underlying condition that could reasonably produce pain, the ALJ must evaluate the disabling effects of the claimant's pain, even though its intensity is shown only by subjective evidence. Hyatt v. Heckler, 807 F.2d 376, 379 (4th Cir.1986), cert. denied, 484 U.S. 820 (1987); Foster v. Heckler, 780 F.2d 1125, 1129 (4th Cir.1986); Myers v. Califano, 611 F.2d 980, 983 (4th Cir.1979). Objective medical evidence of the intensity of a claimant's pain is not required.
 
 
 70
 This Court most recently discussed the standard for evaluating pain in Hyatt v. Sullivan, 899 F.2d 329 (4th Cir.1990). (Hyatt was decided after the briefs were filed in the case before us.) In Hyatt v. Sullivan, a class of disability benefits claimants alleged that the Secretary's policy, which required objective evidence of the intensity of a claimant's pain, violated Fourth Circuit law. The court held that the Secretary's policy was not in accordance with this Circuit's law on pain, and reiterated that "a requirement of objective evidence of pain's intensity is improper." Id. at 334.
 
 
 71
 If no objective evidence of pain's intensity is required under Fourth Circuit law, it stands to reason that a claimant cannot be denied benefits, as was Carr, for providing some, but not enough objective evidence of pain's intensity. As Chief Judge Ervin stated in Foster, the law of this Circuit precludes a court from "requiring that there be a direct tie between objective medical findings and a specific level of pain." Foster v. Heckler, 780 F.2d at 1129.
 
 
 72
 This Court further stated the law of this Circuit as follows:
 
 
 73
 Once an underlying physical or mental impairment that could reasonably be expected to cause pain is shown by medically acceptable objective evidence, such as clinical or laboratory diagnostic techniques, the adjudicator must evaluate the disabling effects of a disability claimant's pain, even though its intensity or severity is shown only by subjective evidence. If an underlying impairment capable of causing pain is shown, subjective evidence of the pain, its intensity or degree can, by itself, support a finding of disability. Objective medical evidence of pain, its intensity or degree, (i.e., manifestations of the functional effects of pain such as deteriorating nerve or muscle tissue, muscle spasm, or sensory or motory disruption), if available, should be obtained and considered. Because pain is not readily susceptible of objective proof, however, the absence of objective medical evidence of the intensity, severity, degree or functional effect of pain is not determinative.
 
 
 74
 Hyatt v. Sullivan, 899 F.2d at 337.
 
 
 75
 The Secretary did not seek certiorari in Hyatt v. Sullivan.
 
 
 76
 In view of the above, this case should be remanded for reconsideration under the correct standard expressed by the Fourth Circuit Court of Appeals in Hyatt v. Sullivan.
 
 
 
 [1]
 Carr appeared without counsel, having elected not to obtain representation from a group that represents indigent litigants because, in her words, "[i]n the past, I have seen the kind of work that the lawyers from Legal Aid and the law schools do, and I figured that I know how I feel and I could present it to [the ALJ] maybe better than they could."
 
 
 [2]
 According to Steadman's Medical Dictionary 529 (5th ed. 1982), fibrositis is an "inflammation of fibrous tissue" or "muscular rheumatism; term used to denote aching, soreness, or stiffness in the absence of objective abnormalities."
 
 
 [3]
 We have recently held that, with the exception of its statement that it merely reiterates the Secretary's past policy, SSR 88-13 complies with Fourth Circuit law. See Hyatt v. Sullivan, 889 F.2d 329, 336 (4th Cir.1990)
 
 
 [4]
 Our conclusion is consistent with the result reached by other courts that have addressed the role of objective evidence in evaluating a claimant's subjective testimony as to pain. See Bates v. Sullivan, 894 F.2d 1059, 1062 (9th Cir.1990) ("The Secretary is not required to believe a claimant's pain testimony, and the Secretary may decide to disregard such testimony entirely whenever the claimant fails to submit objective medical findings that could reasonably be expected to produce the claimed pain ...," even though "an ALJ may not discredit subjective pain testimony solely on the ground that it is not fully corroborated by objective medical findings."); Johns v. Bowen, 821 F.2d 551, 557 (11th Cir.1987) (finding of disability can be sustained where "subjective pain testimony [is] supported by objective medical evidence of a condition that can reasonably be expected to produce the symptoms of which claimant complains"); Owens v. Heckler, 770 F.2d 1276, 1281 (5th Cir.1985) (affirming denial of benefits where ALJ found that the "severity of the pain alleged was not reasonably consistent with the objective medical evidence on record"); Floyd v. Bowen, 833 F.2d 529, 534 (5th Cir.1987) ("in some circumstances pain alone can be disabling despite the absence of supporting medical evidence for the pain itself, if linked to a 'medically determinable impairment' ") (citations omitted) (emphasis in original); Dumas v. Schweiker, 712 F.2d 1545, 1553 (2d Cir.1983) ("the Secretary is entitled to rely on the medical record and his evaluation of claimant's credibility in determining whether claimant suffers from disabling pain")
 
 
 [5]
 Carr inserts one sentence in her brief regarding the ALJ's "heightened duty of care and responsibility to develop the record of an unrepresented claimant." However, the ALJ's record development was complete