23 F.3d 400
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 Gale GLENN, Plaintiff-Appellant,
v.
Donna E. SHALALA, Secretary of Health and Human Services,
Defendant-Appellee.
 No. 93-1711.
 United States Court of Appeals, Fourth Circuit.
 Argued Feb. 8, 1994.
Decided May 23, 1994.
 
 Appeal from the United States District Court for the Western District of North Carolina, at Statesville. Graham C. Mullen, District Judge. (CA-92-29-5-MU)
 Argued: David Randolph Paletta, Paletta & Hedrick, Boone, NC, for appellant.
 Clifford Carson Marshall, Jr., Asst. U.S. Atty., Asheville, NC, for appellee.
 On Brief: Jerry W. Miller, U.S. Atty., Asheville, NC, for appellee.
 W.D.N.C.
 AFFIRMED.
 Before PHILLIPS and NIEMEYER, Circuit Judges, and ELLIS, United States District Judge for the Eastern District of Virginia, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 Appellant, Gale Glenn, contends that the Secretary of Health and Human Services erred in denying his application for Social Security disability payments and his request for a period of disability. We affirm the denial of benefits because there is substantial record evidence to support the Secretary's decision that Glenn was not totally disabled, in light of the number of jobs he could perform in the economy given his exertional and nonexertional limitations.
 
 I.
 
 2
 Glenn is a forty-three (43) year old male who has a high school education and who, in the past, held various jobs including grounds keeper, furniture mover, and carpet layer. For more than six years, Glenn suffered from constant back pain and ultimately underwent a hemilaminectomy. Thereafter, Glenn filed an application for a period of disability and disability insurance benefits, claiming total disability. This application was denied and Glenn filed a second application. The second application was denied both initially and upon reconsideration. Following this, Glenn requested a hearing before an administrative law judge (ALJ).
 
 
 3
 At his March 19, 1991 hearing before the ALJ, Glenn testified that although the hemilaminectomy temporarily eliminated his pain, it returned shortly after the operation. In January 1990, Glenn received two epidural steroid injections, which again temporarily alleviated Glenn's back pain. In July 1990, after Glenn's back pain had again returned, his physician noted that Glenn was "100 percent permanently and totally disabled with regards to his normal work," and further indicated that "it was [his] impression that the patient could be retrained possibly for light work that would not require long periods of sitting or standing or lifting." Later in 1990, Glenn was treated by a physical therapist, who reported significant restoration of motion and reduced muscle pain. Despite the findings of the physical therapist, Glenn testified that he could not return to his former work because of severe pain in his neck, back, and legs brought on by overexertion, stooping, bending, straining, and lifting. Glenn further testified that, although this pain had restricted his daily activities to the point that he had given up gardening, repairing his car, and woodworking, he continued to walk one and one-half miles twice a week, perform his back exercises, use stairs, mow the lawn, take out the trash, and perform household chores, including mopping and vacuuming. Glenn also testified that he drove his car approximately twice a week and was capable of driving his car for up to fifty miles without resting.
 
 
 4
 A vocational expert also testified at the hearing. In response to an appropriate hypothetical question posed by the ALJ, the vocational expert testified that there were 20,000 to 25,000 jobs within the State of North Carolina that an individual with Glenn's limitations could perform.
 
 
 5
 After hearing the case, the ALJ issued a decision denying Glenn's total disability claim. The Appeals Council denied Glenn's request for review of the ALJ's determination, and the ALJ's decision became the final decision of the Secretary of Health and Human Services (Secretary). Glenn then filed a civil action for judicial review. On December 29, 1992, a Magistrate Judge issued a Memorandum and Recommendation affirming the Secretary's denial of benefits. The Magistrate Judge's decision was affirmed by the district court, which entered final judgment in favor of appellee on May 17, 1993.
 
 II.
 
 6
 Judicial review of a final decision regarding disability benefits under the Social Security Act, 42 U.S.C. Sec. 301 et seq., is limited to determining whether the findings of the Secretary are supported by substantial evidence and whether the correct law was applied. See Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir.1990); see also Richardson v. Perales, 402 U.S. 389, 390 (1971). It is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Secretary if her decision is supported by substantial evidence. Hays, 907 F.2d at 1456. We have previously defined "substantial evidence" as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence, but may be somewhat less than a preponderance." Hays, 907 F.2d at 1456 (citing Laws v. Celebreeze, 368 F.2d 640, 642 (4th Cir.1966)); see also Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir.1972).
 
 III.
 
 7
 On appeal, Glenn raises three challenges to the Secretary's determination. First, Glenn contends that the Secretary improperly evaluated his complaints of pain. Under Foster v. Heckler, 780 F.2d 1125 (4th Cir.1986), a claimant must first produce objective medical evidence of a condition which could reasonably be expected to produce the alleged pain. Id. at 1128-29. Once such medical evidence is presented, the effects of the alleged pain on a claimant's residual capacity to function must be considered. Id. at 1130.
 
 
 8
 In the instant case, the Foster standard was properly applied to evaluate Glenn's pain complaints. First, the ALJ found that Glenn suffered a severe musculoskeletal impairment, a condition that could reasonably be expected to produce pain. Then, the ALJ went on to consider the effects of Glenn's pain on his ability to function. On the evidence presented, the ALJ determined that Glenn's subjective complaints of pain were not credible to justify a claim of total disability. To begin with, testimony revealed that Glenn's pain responded positively to surgery, steroid injections, and physical therapy. According to Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir.1986), when a symptom can be reasonably controlled by medication, the symptom is not disabling for the purpose of recovering disability benefits. Also, contrary to his claim of disabling pain, Glenn's own testimony revealed that he was not regularly taking medicine for his pain. Further, although he testified that he was unable to use his hands and arms for pushing, pulling, and reaching, the record shows that Glenn performed daily activities that included cooking, mopping, vacuuming, taking out the trash, and driving, all of which require frequent pushing, pulling, or reaching with his arms and hands. Accordingly, the Secretary's decision that Glenn could perform work at a light exertional level, and therefore was not disabled, was supported by substantial evidence and consistent with Foster .
 
 
 9
 Next, Glenn challenges the Secretary's determination that his allegations of disabling pain were not credible on the ground that the ALJ failed to give adequate weight to the testimony of Glenn's doctor. Glenn points to a July 1990 letter in which Glenn's doctor declares that Glenn was "100 percent permanently and totally disabled with regards to his normal work." Although a treating physician's medical opinion must be given great weight, see Coffman v. Bowen, 829 F.2d 514 (4th Cir.1987), it should not be considered out of context. In the same July 1990 letter, Glenn's physician indicated that Glenn "could be retrained for light work that would require no long periods of sitting or standing." Nothing in the record reflects that Glenn's physician changed his mind in this regard. Consequently, the Secretary's determination that Glenn could be retrained for light work with certain limitations is consistent with Glenn's physician's medical opinion and does not indicate that the ALJ failed to give adequate weight to Glenn's physician's medical opinion.
 
 
 10
 Finally, Glenn challenges the Secretary's finding that Glenn retained residual functional capacity to perform other work in the national economy. To support this finding, there must be expert vocational testimony that Glenn retains the ability to perform specific jobs that exist in the national economy. Walker v. Bowen, 876 F.2d 1097, 1100 (4th Cir.1989); Taylor v. Weinberger, 512 F.2d 664 (4th Cir.1975). The purpose of having a vocational expert testify is to assist the ALJ in determining whether work claimant can perform is available in the national economy. Walker, 876 F.2d at 1100. In order for a vocational expert's testimony to be relevant and probative, it must be based on a consideration of all of the evidence in the record and it must be in response to proper hypothetical questions which fairly set out all of Glenn's impairments. Id. (citations omitted).
 
 
 11
 In the present case, the ALJ thoroughly questioned the vocational expert and used an appropriate hypothetical.* The vocational expert testified that a person with Glenn's limitations could work as a gate tender, a small parts assembler, or a surveillance system operator, and that such jobs existed in significant numbers in the national economy. As a consequence, the Secretary's determination that Glenn could perform jobs found in the national economy was properly based on substantial evidence.
 
 
 12
 Accordingly, the district court's decision upholding the Secretary's determination is
 
 
 13
 AFFIRMED.
 
 
 
 *
 The vocational expert was asked about a hypothetical claimant, 43 years of age, with a twelfth grade educational level, no transferable skills, and with "light" level exertional limitations and some nonexertional limitations which precluded him from engaging in positions that did not provide for a sit or stand option, required work around any unprotected heights or climbing, and required more than occasional stooping, crouching, or crawling