Jeffery PEARSON, Plaintiff,

v.

Carolyn W. COLVIN, Acting
Commissioner of Social
Security, Defendant.

Civil Action No. 2:14cv88.

United States District Court,
E.D. Virginia,
Norfolk Division.

Signed Nov. 5, 2014.

Jonathan H. Walker, Mason Mason Walker & Hedrick PC, Newport News, VA, Anthony W. Bartels, Bartels Law Firm, Jonesboro, AR, for Plaintiff.

Mark Anthony Exley, United States Attorney Office, Norfolk, VA, for Defendant.

## OPINION AND ORDER

HENRY COKE MORGAN, JR., Senior District Judge.

This matter comes before the Court on Plaintiff Jeffery Pearson's ("Plaintiff") Objections to the Report and Recommendation of the United States Magistrate Judge ("Magistrate Judge"). Doc. 17. For the reasons explained below, the Court **OVERRULES** Plaintiff's objections after a *de novo* review and, finding no clear error in the remainder of the Magistrate Judge's Report & Recommendation ("R & R"), **ADOPTS** the R & R in its entirety. Doc. 16.

### I. BACKGROUND

Plaintiff does not object to the recitation of the procedural or factual background of this case contained in the R & R, which sets forth, *inter alia,* the following facts.

### A. Procedural History

Plaintiff filed an application for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB") with the Social Security Administration ("SSA") on April 13, 2009, alleging a disability onset date of February 5, 2009. Doc. 16 at 1. The application alleged that Plaintiff suffered from impairments including back pain, shin splints, and carpal tunnel syndrome. *Id.* Plaintiff's application was denied initially, as well as upon reconsideration. *Id.* Plaintiff then requested an administrative hearing, which was held on October 6, 2010. *Id.* at 1–2. At this hearing, an Administrative Law Judge ("ALJ") found that Plaintiff was not disabled. *Id.* at 2. Plaintiff appealed this decision and was provided a second hearing before a different ALJ on August 16, 2012. *Id.* At the second hearing, Plaintiff was again found not to be disabled. *Id.*

Plaintiff's final request for review by the Appeals Council was denied on January 8, 2014. *Id.* Having thereby exhausted his administrative remedies, Plaintiff filed the instant action on March 4, 2014, seeking judicial review of the Commissioner's final decision. Doc. 1. The parties filed cross motions for summary judgment, which were addressed by the R & R, entered on October 1, 2014. *See* Doc. 16. Plaintiff filed his Objections to the R & R on October 17, 2014. Doc. 17. Defendant filed a Response on October 23, 2014. Doc. 18. Plaintiff then sought leave from the Court to file a Reply, Doc. 20, which the Court granted.[1] Doc. 21.

## B. Factual Background

Plaintiff was forty-five (45) years old at the alleged onset of his disability. Doc. 16 at 2. He has a high school education and his work experience includes service with the Navy and time in food delivery, grounds maintenance, and press operation. *Id.*

In July 2009, Plaintiff reported acid reflux, multi-site joint pain, and anxiety. *Id.* at 2–3. Medical testing revealed degenerative changes to his spine and shoulder but was negative for rheumatoid arthritis. *Id.* at 3. Treatment by a psychiatrist diagnosed Plaintiff with a major depressive disorder—single episode and bereavement—but falling short of Post–Traumatic Stress Disorder. *Id.* Plaintiff received both medication and therapy treatments relating to this diagnosis. *Id.*

In September 2010, Plaintiff underwent further testing on his shoulder. *Id.* A treating physician determined that Plaintiff was suffering from right shoulder synovitis and carpal tunnel syndrome. *Id.* Plaintiff received ongoing medications to help control his pain in this area. *Id.* Additionally, Plaintiff claims to have developed a shin splints condition while serving in the Navy in the early 1980s. *Id.* at 4.

Plaintiff worked as a press operator for a plastics company until he was laid off in February 2009. *Id.* He briefly worked as a life insurance salesman, but resigned for personal reasons. *Id.* At approximately the time of his second hearing before an ALJ, Plaintiff helped to clear an acre of land using a chainsaw. *Id.* At the hearings, Plaintiff testified to being capable of driving his own vehicle, managing his finances, and traveling with regularity. *Id.*

At Plaintiff's second hearing before an ALJ, a Vocational Expert ("VE") testified as to the nature of Plaintiff's prior employment and his future capabilities. *Id.* The ALJ asked the VE a hypothetical question regarding the employment capacity of an individual with Plaintiffs age, education, experience, and medical conditions. *Id.* at 4–5. In response, the VE identified three jobs—motel cleaner, cashier, and machine tender—all of which Plaintiff could adequately perform and are readily available in the economy. *Id.* at 5.

## II. STANDARD OF REVIEW

■ Pursuant to the Federal Rules of Civil Procedure, the Court reviews *de novo* any part of a Magistrate Judge's R & R to which a party has properly objected. Fed.

---

1. Plaintiff first lodged its Reply on October 29, 2014, Doc. 19, which the Court did not consider since it was not properly filed. Although Local Civil Rule 7(F)(1) generally permits the filing of reply briefs in support of motions, it does so under the caveat "unless otherwise directed by the Court." The R & R, echoing Federal Rule of Civil Procedure 72(b)(2), explicitly permitted only the filing of a response. *See* Doc. 16 at 17. Additionally, an objection is not a motion in the traditional sense covered by Local Civil Rule 7(F). Therefore, any briefing relating to Plaintiffs Objections beyond Defendant's Response required leave of Court.

R.Civ.P. 72(b)(3). The Court may then "accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." *Id.* As to the unchallenged portions of the R & R, the Court "must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.,* 416 F.3d 310, 315 (4th Cir.2005) (quoting Fed.R.Civ.P. 72 advisory committee's note).

■ Defendant requests that the Court apply a clear error standard to its entire review based on the allegation that Plaintiff's Objections were "essentially verbatim recitation of arguments" from its summary judgment motion. Doc. 18 at 1 (citing *Williams v. Astrue,* No. 2:09cv60, 2010 WL 395631 (E.D.Va. Feb. 2, 2010)). This argument is grounded in the Court of Appeals for the Fourth Circuit's principle that general objections fail "to satisfy the requirements of Federal Rule of Civil Procedure 72(b) and 28 U.S.C. § 636(b)(1)(C)." *Williams,* 2010 WL 395631, at *3.

In *Williams,* however, the plaintiff's objections were "practically a verbatim copy of the argument section of [p]laintiff's previously-filed summary judgment brief." *Id.* at *2. Such is not the case here. Plaintiffs Objections specify two aspects of the R & R to which he objects, and although the arguments are very similar to those made on summary judgment, the language is not verbatim. *Compare* Doc. 13 at 18–21, *with* Doc. 17 at 1–7 (distinctions highlighted by the fact that Plaintiff's first point in his Objections is substantially longer than the same point when made previously). Therefore, the Court will conduct a *de novo* review of the two aspects of the R & R raised in Plaintiff's Objections. *See* Doc. 17 at 1 & 7.

■ In exercising a *de novo* review, the Court analyzes the Commissioner's final decision using the same standard as that used by the Magistrate Judge. Specifically, the Court's review of the Commissioner's decision is limited to determining whether that decision was supported by substantial evidence on the record, and whether the proper legal standard was applied in evaluating the evidence. 42 U.S.C. § 405(g); *Johnson v. Barnhart,* 434 F.3d 650, 653 (4th Cir.2005) (per curiam). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Craig v. Chater,* 76 F.3d 585, 589 (4th Cir.1996)) (internal quotation marks omitted). Courts have further explained that substantial evidence is less than a preponderance of evidence, but more than a mere scintilla of evidence. *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir.1966). Importantly, in reviewing the ALJ's decision the Court does not "reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Craig,* 76 F.3d at 589. Thus, if the Court finds in its *de novo* review of the objections that there was substantial evidence to support the ALJ's factual findings, even if there was also evidence to support contrary findings, the R & R must be adopted.

### III. ANALYSIS

Plaintiff disagrees with the ALJ's conclusion that he is not eligible for DIB and SSI, and asks this Court to reverse and remand to the Commissioner. Doc. 13 at 1. In his Objections to the R & R, Plaintiff argues that the Magistrate Judge erred (1) by deciding that the ALJ had no duty to resolve the alleged conflict between the VE's testimony and the Dictionary of Occupational Titles ("DOT"), and (2) by deciding that the ALJ's hypothetical accu-

rately reflected Plaintiffs limitations. Doc. 17 at 1, 7.

## A. The ALJ met its duty to resolve any "apparent" conflict in evidence

Social Security Ruling 00–4p states that "[w]hen there is an *apparent unresolved conflict* between VE . . . evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE . . . evidence to support a determination or decision about whether the claimant is disabled." 2000 WL 1898704, at *2 (Dec. 4, 2000) [hereinafter "SSR 00–4p"] (emphasis added). A split of authority exists as to the extent of an ALJ's duty to investigate "unresolved" conflicts, and the impact that has on the meaning of the word "apparent" in SSR 00–4p. *See* Doc. 19 at 4–5 (comparing *Justin v. Massanari*, 20 Fed.Appx. 158 (4th Cir.2001), and *Moore v. Colvin*, 769 F.3d 987 (8th Cir.2014)). The Fourth Circuit has not yet issued a published opinion to resolve this issue conclusively. *Id.* at 5.

The Fourth Circuit has, however, dealt directly with this issue in an unpublished opinion. *See Justin*, 20 Fed.Appx. at 160. In *Justin*, the Fourth Circuit stated that SSR 00–4p "only requires an ALJ to address evident discrepancies between a [VE]'s testimony and the [DOT], and specifically declines to place an obligation on ALJs to uncover such discrepancies." *Id.*; *see also Stuckey v. Colvin*, No. 2:12cv386, 2013 WL 6185837, at *3 (E.D.Va. Nov. 25, 2013) ("Once the ALJ fulfills its 'affirmative responsibility' to inquire about possible conflicts and, if necessary, resolve reasonably explained conflicts, the ALJ may accept the VE's testimony in its consideration of whether there is substantial evidence of disability.").

■This Court sees no reason to depart from the well-reasoned persuasive authority of its Circuit and District. Ac-

cordingly, although the ALJ does have an affirmative duty to elicit a reasonable explanation for any "apparent unresolved conflict," such a conflict cannot be "apparent" if the ALJ specifically asks the VE if it exists, and the VE testifies that it does not. Therefore, this Court **FINDS** that the ALJ's duty does not require "an independent investigation into the testimony of witnesses." *Stuckey*, 2013 WL 6185837, at *3 (quoting *Smith v. Colvin*, 2013 WL 5966427 (N.D.W.Va. Nov. 8, 2013)).

■ Here, at the beginning of the VE's testimony, the ALJ requested the VE to inform the tribunal at any point that his testimony conflicted with the DOT. Doc. 16 at 9. This request, coupled with the fact that the VE did not point out any such conflict, satisfies the duty of the ALJ to inquire into apparent conflicts. Neither the VE's testimony, nor the ALJ's requisite inquiry, nor Plaintiff's counsel, elicited any evidence of a conflict between the VE's assessment of viable alternative employment and the descriptions of those three positions in the DOT. *Id.* Therefore, there was no "apparent unresolved conflict" in this case for the ALJ to explain. *See* SSR 00–4p. Plaintiff's Objection in this regard is thereby **OVERRULED.**

## B. The ALJ's hypothetical was appropriate

■ At the administrative hearing, the ALJ posed the VE a hypothetical scenario where an individual with Plaintiff's age, education, and experience "could perform simple routine tasks requiring lifting and carrying no more than 10 lbs. frequently and 20 lbs. occasionally, standing and walking six hours in an eight hour day, but only occasional lifting and reaching overhead with the non-dominant upper extremity, occasional bending, stooping, crouching, kneeling and crawling, and ambulating only on level surfaces." Doc. 16 at 4–5.

The VE used this hypothetical to determine three types of alternative employment that Plaintiff was still physically capable of performing. *Id.* at 5. Based on the existence of these alternatives, the ALJ denied Plaintiffs claim for benefits and the R & R upheld the validity of the hypothetical. *Id.* at 11–14.

Plaintiff's Objection is based on the argument that his treatment records show that he did not possess "the ability consistently to stand or walk six-to-eight hours a day, five days a week in the performance of light work" as required by the ALJ's hypothetical. Doc. 17 at 7–8. In support of this point, Plaintiff points to ten citations in the administrative record that allegedly "show that he was treated on numerous occasions for multiple joint pain, leg pain, and chronic shin splints." *Id.* Defendant does not address this argument. *See* Doc. 18.

The Court has reviewed this issue *de novo,* specifically including those treatment records highlighted by Plaintiff, and **FINDS** no error in the hypothetical presented by the ALJ. Although Plaintiff has certainly pointed to numerous records of his complaints to medical personnel regarding leg and shin pain, *see* Doc. 17 at 8, the Court sees no evidence in the record of Plaintiffs inability to stand or walk in the limited manner required by light work. In many of the treatment records the leg or shin Plaintiff's complaints were merely part of his medical history, in some he was prescribed pain medication, and in several the doctor theorized about the possibility of chronic pain syndrome. No treatment record discussed or recommended limitation of activity on a level that would conflict with the ALJ's hypothetical. Additionally, as late as June 2011, Plaintiff indicated that he had "lost 20 pounds walking without a cain [sic]." Doc. 9 at 1473.

Certainly, Plaintiff's medical records show some limitations from what is considered fully normal workplace activity. These limitations however, are accounted for in the ALJ's hypothetical, which was limited to light work, and to ambulation only on flat ground. Based on this Court's review of the record, the limitations in the ALJ's hypothetical are sufficient to appropriately reflect Plaintiffs employment capacity at the time. Therefore, Plaintiffs Objection is **OVERRULED.**

## IV. CONCLUSION

For the reasons discussed above, the Court concludes that the ALJ's decision is supported by substantial evidence in the record. Therefore, after a *de novo* review, the Court **OVERRULES** Plaintiff's Objections, Doc. 17, and finding no other clear error, **ADOPTS** the R & R, Doc. 16, in its entirety. Accordingly, the Court **DENIES** Plaintiff's Motion for Summary Judgment, Doc. 12, **GRANTS** Defendant's Motion for Summary Judgment, Doc. 14, and **AFFIRMS** the Recommendation of the Magistrate Judge that the final decision of the Commissioner be upheld. This case is thereby **DISMISSED WITH PREJUDICE.**

Plaintiff is advised that he may appeal from this Opinion and Final Order by forwarding a written notice of appeal to the Clerk of the United States District Court, United States Courthouse, 600 Granby Street, Norfolk, Virginia 23510. Said written notice must be received by the Clerk within sixty (60) days from the date of this Order. If Plaintiff wishes to proceed *in forma pauperis* on appeal, the application to proceed *in forma pauperis* is to be submitted to the Clerk, United States Court of Appeals, Fourth Circuit, 1100 E. Main Street, Richmond, Virginia 23219.

The Clerk is **REQUESTED** to send a copy of this order to all counsel of record.

It is so **ORDERED**.

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

DOUGLAS E. MILLER, United States Magistrate Judge.

Plaintiff Jeffrey Pearson ("Pearson" or "plaintiff") brought this action under 42 U.S.C. §§ 1383(c)(3) and 405(g) seeking judicial review of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his claim for a period of disability insurance benefits ("DIB"), and supplemental security income ("SSI") under Title II and Title XVI of the Social Security Act. Both parties filed motions for summary judgment. *See* (ECF Nos. 12, 14). The action was referred to a United States Magistrate Judge for a Report and Recommendation pursuant to the provisions of 28 U.S.C. §§ 636(b)(1)(B) and (C) and Rule 72(b) of the Federal Rules of Civil Procedure. For the reasons stated below, the Court recommends that the decision of the Commissioner be affirmed.

### I. PROCEDURAL BACKGROUND

Plaintiff filed for DIB and SSI on April 13, 2009. (R. 198–206). His application alleged disability since February 5, 2009 due to a variety of impairments, including back pain, shin splints, and carpal tunnel syndrome. (R. 204, 241). The Commissioner denied his application initially and upon reconsideration. (R. 35–41). Pearson made a timely request for a hearing before an administrative law judge ("ALJ"), which was held on October 6, 2010. The ALJ found Pearson not disabled and he appealed. On May 17, 2012,

the claim was remanded for further review.

On August 16, 2012, a different ALJ conducted a second hearing and again found plaintiff was not disabled within the meaning of the Social Security Act, and denied his claim for DIB and SSI. (R. 8–26). Pearson again requested review by the Appeals Council. This request for review was denied on January 8, 2014, (R. 1–5), thereby making the ALJ's decision the final decision of the Commissioner.

Pursuant to 42 U.S.C. §§ 1383(c)(3) and 405(g), Pearson filed this action seeking judicial review of the Commissioner's final decision on his denied claim. This case is now before the Court to resolve the parties' cross-motions for summary judgment.

### II. FACTUAL BACKGROUND

Pearson was born in 1963 and was 45 years old at the time of the alleged onset of disability, and was therefore considered to be a younger individual pursuant to 20 C.F.R. §§ 404.1563(c) and 416.963(c). (R. 25). He has a high school education, spent two years in the Navy and has past work experience in food delivery, grounds maintenance and as a press operator. Plaintiff worked a variety of jobs full time until 2009, when he was laid off from his position as a press operator, making plastic parts. (R. 84–87, 241).

Pearson's voluminous medical record is comprised primarily of records from the Veterans Administration (VA) facilities where Pearson has been treated since July 2009. (R. 679). On that date he presented with complaints of acid reflux, multi-site joint pain and anxiety with disturbed sleep.[1] (R. 680–81). His treating physi-

---

1. Neither Pearson nor the Commissioner rely extensively on a detailed examination of Pearson's medical record to address the assign-

ments of error in this appeal. Accordingly, the Court has limited its recitation of the

cian, Dr. Ramona Ramrup, prescribed medication for acid reflux and ordered a CT scan and additional testing. (R. 681). The CT scan revealed degenerative changes of the lumbar spine. (R. 1343–44). An MRI of Pearson's right shoulder also showed degenerative changes at the acromioclavicular joint and other findings suggestive of rheumatoid arthritis. (R. 1344–45). Other testing, including x-rays of Pearson's hands ruled out rheumatoid arthritis. (R. 1343, 1337, 653).

Also in July 2009, Pearson was evaluated for his complaints of anxiety by psychiatrist, Carmen Espaillit–Serje, M.D. Pearson was described as tearful and sad with a depressed mood. Dr. Espaillit–Serje diagnosed major depressive disorder—single episode, and bereavement. Pearson's longtime partner had recently died. (R. 656–57). Dr. Espaillit–Serje prescribed medication and individual psychotherapy which Pearson regularly attended, reporting steady progress. (R. 505, 518, 524, 542, 595–96). Although Pearson described an incident in the military where he was harassed for being homosexual, his doctors concluded he did not meet the criteria for PTSD. (R. 78–79, 523). Still, he had extensive treatment at the VA for his mental health issues, including regularly attending group therapy. (*E.g.*, R. 1471, 1476, 1484, 1516, 1796, 1823–24, 1866,1920).

In September 2010, Pearson underwent additional testing and treatment for orthopaedic complaints. He consulted with Dr. Gary Miller who concluded he had right shoulder synovitis and carpal tunnel syndrome. He underwent another MRI of his shoulder and scheduled surgery, but the surgery had not occurred prior to the 2012 hearing. (R. 1258–60; 52–53). Pearson did receive regular medication and occasional injections to control his shoulder pain. (R. 594, 1514, 1662–63, 1832–33).

At the hearings before the ALJ, Pearson testified in unusual detail concerning his impairments and activities of daily living. He described developing shin splints while in boot camp in the Navy in the early 1980s. (R. 57). He also developed a hearing problem which was corrected with surgery. (R. 653). He claims to have acquired PTSD as a result of an incident of harassment over his sexual orientation while serving in Italy in the United States Navy. (R. 77–79).

In September 2008, Pearson lost his partner of 25 years and, shortly after that in February 2009, was laid off from his job as a press operator. (R. 38–33, 56). Thereafter he trained to become a life insurance salesman, but testified that he "just couldn't do it" because he was uncomfortable selling insurance to elderly customers at inflated rates. (R. 56). At the time of the second hearing, Pearson had recently relocated to Virginia but he described previously residing with his mother on rural property in Arkansas. (R. 39). During that time he helped clear an acre of land using a chainsaw in 2011, approximately two years after his alleged onset date. (R. 55). He testified to completing high school and being able to handle all of his personal grooming, drive his own vehicle, balance a checkbook, and shop for himself. (R. 32, 46). He described regular travel, including an annual vacation with friends in Augusta, Georgia. (R. 60–61). His medical records also contain regular references to leisure travel and a relatively active social life. (R. 852, 861,818, 1116, 1180, 1986).

In addition to Pearson's testimony, the ALJ received evidence from a Vocational Expert ("VE"). The VE examined Pearson about the nature of his previous em-

record to those general complaints most rele- vant to the issues presented.

ployment, and characterized his previous jobs in food delivery, grounds maintenance and manufacturing as medium unskilled jobs. (R. 85–86). The ALJ then asked the VE to consider a hypothetical individual with Pearson's age, education and experience who could perform simple routine tasks requiring lifting and carrying no more than 10 lbs. frequently and 20 lbs. occasionally, standing and walking six hours in an eight hour day, but only occasional lifting and reaching overhead with the non-dominant upper extremity, occasional bending, stooping, crouching, kneeling and crawling, and ambulating only on level surfaces. (R. 86–87). The VE identified three jobs which the hypothetical individual could perform, including unskilled light work as a motel cleaner, cashier, and machine tender/bench operator. (R. 88–89). Thereafter, the ALJ asked the VE if a limitation to only face-to-face communication would alter the individual's ability to perform any of these three jobs and the VE testified that it would not.

### III. STANDARD OF REVIEW

In reviewing a decision of the Commissioner denying benefits, the Court is limited to determining whether the decision was supported by substantial evidence on the record and whether the proper legal standard was applied in evaluating the evidence. 42 U.S.C. § 405(g) (2008); *Johnson v. Barnhart,* 434 F.3d 650, 653 (4th Cir.2005) (per curiam); *Hays v. Sullivan,* 907 F.2d 1453, 1456 (4th Cir.1990). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)). It consists of "more than a mere scintilla" of evidence, but may be somewhat less than a preponderance.

*Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir.1966).

In reviewing for substantial evidence, the Court does not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Craig v. Chater,* 76 F.3d 585, 589 (4th Cir.1996); *Hays,* 907 F.2d at 1456. "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Commissioner (or the [Commissioner's] designate, the ALJ)." *Craig,* 76 F.3d at 589. The Commissioner's findings as to any fact, if supported by substantial evidence, are conclusive and must be affirmed. *Perales,* 402 U.S. at 390, 91 S.Ct. 1420. Thus, reversing the denial of benefits is appropriate only if either the ALJ's determination is not supported by substantial evidence on the record, or the ALJ made an error of law. *Coffman v. Bowen,* 829 F.2d 514, 517 (4th Cir.1987).

### IV. ANALYSIS

To qualify for a period of disability and disability insurance benefits under sections 216(i) and 223 of the Social Security Act, 42 U.S.C. §§ 416(i) and 423, an individual must meet the insured status requirements of these sections, be under age sixty-five, file an application for disability insurance benefits and a period of disability, and be under a "disability" as defined in the Act.

To be eligible for SSI payments under Title XVI of the Act, the claimant, in addition to satisfying the income and resource requirements in 42 U.S.C. § 1382(a) and (b), must also satisfy the basic eligibility and definitional requirements for disability found in 42 U.S.C. § 1381(a) and § 1382(c).

The Social Security Regulations define "disability" as the: "inability to do any

substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a); *see also* 42 U.S.C. §§ 423(d)(1)(A) and 416(i)(1)(A). To meet this definition, a claimant must have a "severe impairment" which makes it impossible to do previous work or any other substantial gainful activity that exists in the national economy. 20 C.F.R. § 404.1505(a); *see* 42 U.S.C. § 423(d)(2)(A).

The regulations promulgated by the Social Security Administration provide that all material facts will be considered in determining whether a claimant has a disability. The Commissioner follows a five-step sequential analysis to ascertain whether the claimant is disabled. The five questions which the ALJ must answer are:

1. Is the individual involved in substantial gainful activity?

2. Does the individual suffer from a severe impairment or combination of impairments which significantly limit his or her physical or mental ability to do work activities?

3. Does the individual suffer from an impairment or impairments which meet or equal those listed in 20 C.F.R., Pt. 404, Sbpt. P, App. 1 (a "listed impairment" or "Appendix 1")?

4. Does the individual's impairment or impairments prevent him or her from performing his or her past relevant work?

5. Does the individual's impairment or impairments prevent him or her from doing any other work?

An affirmative answer to question one, or a negative answer to question two or four, results in a determination of no disability. An affirmative answer to question three or five establishes disability. This analysis is set forth in 20 C.F.R. §§ 404.1520 and 416.920. The burden of proof and production rests on the claimant during the first four steps, but shifts to the Commissioner on the fifth step. *Pass v. Chater,* 65 F.3d 1200, 1203 (4th Cir.1995) (citing *Hunter v. Sullivan,* 993 F.2d 31, 35 (4th Cir.1992)).

"When proceeding through this five step analysis, the ALJ must consider the objective medical facts, the diagnoses or medical opinions based on these facts, the subjective evidence of pain and disability, and the claimant's educational background, age, and work experience." *Schnetzler v. Astrue,* 533 F.Supp.2d 272, 286 (E.D.N.Y.2008). At all steps the ALJ bears the ultimate responsibility for weighing the evidence. *Hays,* 907 F.2d at 1456.

## A. *ALJ's Decision*

In the present case, the ALJ made the following findings under the five part analysis: (1) the ALJ found that Pearson had not engaged in substantial gainful activity since February 5, 2009 (the alleged onset date of disability); (2) Pearson had severe impairments of right shoulder tendonitis, synovial lesion, left ear disorder, diffuse joint pain due to arthritis, back pain, carpal tunnel syndrome of the right wrist, anxiety and depression; (3) his impairments (or combination of impairments) did not meet one of the listed impairments in Appendix 1; (4) Pearson was unable to perform past relevant work, but had the RFC to perform a modified range of unskilled light work; and (5) considering Pearson's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that Pearson could perform. (R. 13–26).

In plaintiff's motion for summary judgment, he alleges that the ALJ erred by not resolving a conflict between the job descriptions offered by the VE and the characteristics of those jobs in the Dictionary of Occupational Titles (DOT). He also argues the ALJ failed to include all of his limitations in the hypothetical presented by the VE and improperly assessed his credibility. The Court will address each of these arguments.

**B.** ***The ALJ did not fail to resolve any conflict between the VE's testimony and job descriptions in the DOT.***

Pearson first argues that the ALJ erred by not resolving an alleged conflict between the VE's testimony and the jobs he identified in the DOT. In assessing Pearson's disabled status, the ALJ considered both the DOT and VE testimony. *See Fisher v. Barnhart,* 181 Fed.Appx. 359, 365 (4th Cir.2006) (unpublished per curiam); SSR 00–4p; 2000 WL 1898704, at *2 (noting that the DOT and testimony of the VE should typically be consistent). Social Security Regulations provide that "when there is an apparent unresolved conflict between [VE] evidence and the [DOT], the adjudicator must elicit a reasonable explanation for the conflict ..." and "resolve the conflict by deciding if the [VE's] explanation for the conflict is reasonable." *Fisher,* 181 Fed.Appx. at 365 (citing SSR 00–4p). Before relying on the VE's testimony to make a disability determination, the ALJ must resolve any apparent conflict. *Id.*

In this case, the ALJ determined that Pearson's RFC restricted him to a limited range of unskilled light work. Specifically, he found Pearson had the ability to lift and carry 20 lbs. occasionally, 10 lbs. frequently, stand or walk six hours in an eight hour day and further limited him to only "occasional overhead lifting/reaching using the

non-dominant upper extremity," in addition to other postural limitations. (R. 16). At the hearing, the ALJ included these limitations in a hypothetical requesting that the VE identify any jobs available in the national economy which such a person could perform. (R. 87). The VE testified that such a person could perform the job of "motel cleaner" identified as DOT Job No. 323.687–014; Cashier II, DOT Job No. 211.462–10; and machine tender/press operator, DOT Job No. 690.685–14. (R. 87–89). At the beginning of his testimony, the ALJ also asked the VE to advise both himself and counsel if his testimony differed from the descriptions in the DOT. The VE agreed to do so, and in describing the three positions, he did not note any conflict. (R. 84). The ALJ relied on this testimony in concluding that Pearson's RFC would permit him to perform all three jobs. (R. 26).

Pearson's counsel made no objection to the VE's testimony, nor did he point out at the hearing any apparent conflict between the DOT job descriptions and the VE's conclusion that a hypothetical person with limited overhead reaching could perform all three jobs. However, in this Court Pearson alleges that the ALJ had an obligation to resolve a conflict between the VE's testimony and all three job descriptions. He argues that the DOT description for each of the positions requires "frequent reaching," and that this conflicts with his RFC limitation of only occasional overhead reaching. (ECF No. 13, at 19).

"Reaching" is not defined in the DOT but rather in a companion guide, Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles (Dep't of Labor 1993)(SCO). The SCO defines reaching as "extending hands and arms in any direction." SCO Appendix C, at C–3. Because the SCO defines reaching to include overhead reaching,

Pearson argues that there was a conflict with the VE's testimony which the ALJ failed to adequately resolve.

As yet, the Fourth Circuit "has declined to place an obligation on the ALJ to uncover conflicts between VE and DOT evidence, but requires the ALJ to inquire if discrepancies between a VE's testimony and the DOT exist and to resolve such discrepancies." *Stuckey v. Colvin*, No. 2:12cv386, 2013 WL 6185837 at *3 (E.D.Va. November 25, 2013) (citing *Justin v. Massanari*, 20 Fed.Appx. 158 (4th Cir.2001). The rule requiring explanation of a conflict "does not require an ALJ to 'conduct an independent investigation into the testimony of witnesses nor is an ALJ required to explain how a' conflict was resolved if 'the plaintiff did not bring the Vocational Expert's mistake to the ALJ's attention.'"). *Smith v. Colvin*, No. 3:13cv17, 2013 WL 5966427, at *4 (N.D.W.Va. Nov. 8, 2013) (quoting *Boggs v. Astrue*, 2012 WL 5494566 (N.D.W.Va. Nov. 13, 2012)). Similarly in *Justin*, an unpublished opinion, the Fourth Circuit held that the ALJ must only address evidence discrepancies between a VE's testimony and the DOT, and is not obligated to uncover those discrepancies. 20 Fed.Appx. at 160.

In this case, the ALJ relied on the VE's testimony that his descriptions of the work were consistent with the DOT. While that blanket statement may not be sufficient to discharge his obligation in every case, it is sufficient here where the DOT job description does not clearly conflict with the VE's testimony. As the Commissioner observes, all three job descriptions in the DOT involve frequent reaching. Reaching is defined as extending arms or legs in any direction. There is nothing inconsistent with the VE's testimony that a hypothetical person with limitation to "occasional overhead reaching" affecting only one of his arms could perform these three jobs.

Pearson, for example, was unlimited in overhead reaching on the left side, and not otherwise limited in his ability to reach in any direction with his right side. Accordingly, there is no actual or apparent inconsistency between the VE's testimony that a person with such limitations could perform these three jobs as they are described by the DOT. As a result, the ALJ was not under any affirmative duty to "elicit a reasonable explanation for the conflict." *Fisher*, 181 Fed.Appx. at 365. To the extent Pearson or his counsel believed there was an inconsistency which required explanation, it was incumbent upon counsel to point it out. *See, e.g., Schrader v. Astrue*, No. 3:12cv54, 2013 WL 1192315, at *5–6 (N.D.W.Va. Mar. 22, 2013). *Carey v. Apfel*, 230 F.3d 131, 146–47 (5th Cir.2000) ("claimants should not be permitted to scan the record for implied or unexplained conflicts between the specific testimony of an expert witness and the voluminous provisions of the DOT, and then present that conflict as reversible error, when the conflict was not deemed sufficient to merit adversarial development in the administrative hearing."). Because the undersigned finds no conflict in the VE's testimony and the DOT job descriptions relied upon by the ALJ, this assignment of error provides no basis for remand or reversal.

C. *The hypothetical presented to the VE and Pearson's RFC adequately reflected the limitations found by the ALJ.*

Pearson's next argument relates to the limitations described in the ALJ's hypothetical to the VE. In reaching his decision that Pearson was capable of performing work in the national economy, the ALJ relied on the VE's testimony in response to these hypotheticals. When relying on VE testimony based on hypothetical

questions, the hypotheticals posed must account for all of the claimant's limitations as shown by the record. *Walker v. Bowen,* 889 F.2d 47, 50–51 (4th Cir.1989). If limitations are omitted, the VE's testimony is of limited value, and may not constitute substantial evidence. *See Johnson v. Barnhart,* 434 F.3d 650, 659 (4th Cir.2005) (citing *Walker,* 889 F.2d at 50). Failing to consider limitations shown by the evidence, and then relying upon the errant hypothetical to form an opinion about the availability of work suitable to the claimant is error. *Hancock v. Barnhart,* 206 F.Supp.2d 757, 767 (W.D.Va.2002). Pearson claims the ALJ erred by concluding that Pearson could perform light work and including that exertional level in the hypothetical, despite medical evidence of his shin splints and leg pain. He claims his leg impairments would not permit the extended standing or walking required by light work, including the three positions identified by the VE. After reviewing the VE's testimony and Pearson's arguments, the undersigned finds no error in the ALJ's analysis.

On examining the VE, the ALJ first asked him to characterize Pearson's past work. The VE then examined Pearson concerning a prior position as press operator. After hearing Pearson's description of his former job, the VE stated that this position was characterized by the Dictionary of Occupational Titles (DOT) as light unskilled, but based on the lifting Pearson described it could have been performed as medium work. (R. 84–86). He also described Pearson's other positions, including pizza delivery and groundskeeping as unskilled medium work. (R. 84). Next, the ALJ crafted a hypothetical including Pearson's age and past experience and all of the limitations he later imposed in his RFC. The ALJ asked whether such a person could perform any of Pearson's past work. In response to this question, the VE stated that the hypothetical individual could not perform any of Pearson's past work. (R. 87). The VE then offered three positions which such an individual could perform. The ALJ's opinion relied on the hypothetical and the VE's testimony in concluding work was available to Pearson. (R. 26).

The ALJ's RFC and hypothetical adequately reflect the limitations he imposed. At the hearing, Pearson's counsel did not suggest any particular limitation as an additional restriction, nor did he pose his own hypothetical to the VE. The ALJ's hypothetical included restrictions that he stand or walk up to six hours in an eight-hour day, limited his lifting and carrying, imposed several postural limitations and the avoidance of uneven surfaces. These limits adequately address Pearson's impairments. In arguing to the contrary, Pearson does not identify any medical record or objective finding which was not accommodated by his RFC. Instead, he makes the general complaint that the ALJ erred by concluding he could perform light work because his "chronic shin splints and leg pain" would preclude the walking required by light work.

Light work involves lifting "no more than 20 pounds at a time ... with frequent lifting of items weighing up to 10 lbs." 20 C.F.R. § 404.1567(b). A good deal of walking and standing is also required. *Id.* However, given Pearson's own testimony involving the extent of his daily activities, the ALJ's RFC for modified light work accommodates his needs. No physician has suggested Pearson's leg pain would affect his ability to walk as required by light work, nor has Pearson cited to any medical record suggesting he was so limited. Although it is true that Pearson occasionally used a cane, it does not appear that it was prescribed by his doctor as medically necessary. (R. 655–56). More-

over, later in his treatment he told his physicians he had stopped using the cane. (R. 1473). Finally, the ALJ recognized that Pearson occasionally used a cane, which he accommodated by limiting his ambulation to flat level ground. (R. 23).

Because Pearson has not indicated—and the Court's own review has not disclosed—any evidence from a treating or examining physician that suggests he suffered from any greater impairment than what the ALJ noted, substantial evidence supports the ALJ's RFC determination and the hypothetical incorporating those limits. *Accord Johnson*, 434 F.3d at 659.

### D. *The ALJ properly evaluated Pearson's credibility.*

Pearson also argues that the ALJ erred in finding Pearson's complaints of disabling limitations inconsistent with the medical record and failing to account for these limitations in his hypothetical. The ALJ specifically found that the treatment records do not reflect the degree of limitation Pearson alleged. (R. 22). He relied on this factor to impose a limitation to light work, which he held would accommodate "some level of discomfort." *Id.*

In deciding whether a plaintiff is disabled, the ALJ must consider all symptoms, including pain, and the extent to which such symptoms can reasonably be accepted as consistent with the objective evidence. 20 C.F.R. § 404.1529(a). A plaintiff's subjective statements about pain or other symptoms alone are not enough to establish disability. *Id.* Under both federal regulations and Fourth Circuit precedent, determining whether a person is disabled by pain or other symptoms is a two-step process. First, the plaintiff must satisfy a threshold obligation of showing by objective medical evidence a medical impairment reasonably likely to cause the symptoms claimed. 20 C.F.R.

§ 404.1529(b); *Craig,* 76 F.3d at 594–95. "However, while a claimant must show by objective evidence the existence of an underlying impairment that could cause the pain alleged, 'there need not be objective evidence of the pain itself.'" *Craig,* 76 F.3d at 592–93 (quoting *Foster v. Heckler,* 780 F.2d 1125, 1129 (4th Cir.1986)).

After the plaintiff has satisfied the first step, the ALJ must evaluate the intensity and persistence of the plaintiff's symptoms and the extent to which they affect her ability to work. 20 C.F.R. § 404.1529(c)(1). In making this evaluation, the ALJ must consider "all the available evidence," including: (1) the plaintiff's history, including her own statements, *Id.;* (2) objective medical evidence, which is defined as "evidence obtained from the application of medically acceptable clinical and laboratory diagnostic techniques, such as evidence of reduced joint motion, muscle spasm, sensory deficit or motor disruption," *Id.* § 404.1529(c)(2); and (3) other evidence submitted by the plaintiff relevant to the severity of the impairment such as evidence of daily activities, medical treatments and medications, and descriptions of the pain or other symptoms, *Id.* at § 404.1529(c)(3).

In evaluating the intensity and persistence of the plaintiff's symptoms and the extent to which they affect his ability to work, the ALJ must consider whether inconsistencies exist and the extent to which there is conflict between the plaintiff's statements and the other evidence. *Id.* § 404.1529(c)(4). According to the regulations, a plaintiff's "symptoms, including pain, will be determined to diminish [his] capacity for basic work activities to the extent that [his] alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical evidence and other evidence." *Id.*

Although Pearson satisfied his initial burden under the two-step inquiry set forth in the regulations and adopted by the Fourth Circuit, the ALJ found that Pearson's statements regarding the limiting effects of these symptoms were inconsistent with the objective medical evidence and his activities of daily living. (R. 22–23). In so finding, the ALJ considered the entire record and documented his review in detail in the opinion. He specifically observed that despite his allegedly disabling pain, Pearson engaged in extensive activities of daily living. (R. 55, 57, 60–63). As referenced previously, Pearson testified that he had led a rather active lifestyle, including regular travel for pleasure, performing household duties, and caring for pets. (R. 23, 24). Pearson does regular volunteer work, drives his own truck, shops in stores, and goes outside frequently (3–4 times per day).

As the ALJ noted—in an underlined portion of his opinion—Pearson testified that he and his 76–year old mother had cleared an acre of timberland using a chainsaw in the year preceding the hearing (two years after his alleged onset date). (R. 23). While Pearson's counsel observes this occurred in the preceding year, there is nothing in the medical record to suggest Pearson's physical impairments substantially worsened after that time. Moreover, Pearson has not identified any medical record or objective finding suggesting that they had. To the contrary, in 2011 and 2012 most of his medical evidence related to his mental health issues. At a group session in 2011 he described "walking" as an activity he used to relieve stress. (R. 1498). His consultations with orthopaedic providers related almost exclusively to his shoulder. Although he continued to complain of leg pain, his doctors seem to have been unable to identify a particular cause. (R. 1598–99).

The ALJ noted that while Pearson reported complaints of pain due to his shoulder condition and arthritis, these limitations have been accommodated by limiting him to a modified range of light work, which is consistent with the exertional level of his activities of daily living. In so holding, the ALJ complied with both the regulations and Fourth Circuit precedent in evaluating Pearson's testimony, and supported his decision with substantial evidence.

To the extent Pearson contends that the ALJ erred in evaluating his credibility, the Court must give great deference to the ALJ's credibility determinations. *Eldeco, Inc. v. NLRB*, 132 F.3d 1007, 1011 (4th Cir.1997). "When factual findings rest upon credibility determinations, they should be accepted by the reviewing court absent 'exceptional circumstance.'" *Id.* (quoting *NLRB v. Air Prods. & Chems., Inc.*, 717 F.2d 141, 145 (4th Cir.1983)). The Court must accept the ALJ's factual findings and credibility determinations unless "'a credibility determination is unreasonable, contradicts other findings of fact, or is based on an inadequate reason or no reason at all.'" *Id.* (quoting *NLRB v. McCullough Envtl. Servs., Inc.*, 5 F.3d 923, 928 (5th Cir.1993)). Here, the ALJ performed the required analysis and articulated a number of reasons for not fully crediting Pearson's statements. There is ample objective evidence in the Record to contradict Pearson's self-report of disabling limitations and to support the ALJ's credibility determination. Accordingly, the Court finds the ALJ properly evaluated Pearson's credibility.

## V. RECOMMENDATION

Because the ALJ did not need to analyze any conflicts between the VE's testimony and the DOT, and he correctly evaluated Pearson's credibility and the medical

evidence in framing his hypothetical, his conclusion that Pearson was not disabled is supported by substantial evidence. Accordingly, the undersigned recommends that Pearson's motion for summary judgment (ECF No. 12) be DENIED, that the Commissioner's motion for summary judgment (ECF No. 14) be GRANTED, and that the final decision of the Commissioner be AFFIRMED.

### VI.  REVIEW PROCEDURE

By copy of this Report and Recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1.  Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date of mailing of this Report to the objecting party, 28 U.S.C. § 636(b)(1)(C), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

2.  A district judge shall make a *de novo* determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in waiver of right to appeal from a judgment of this Court based on such findings and recommendations. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Carr v. Hutto,* 737 F.2d 433 (4th Cir.1984); *United States v. Schronce,* 727 F.2d 91 (4th Cir.1984).

Norfolk, Virginia, October 1, 2014.